## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **WILLIAM DIMITRAS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-2544-KHV** |
| | ) | |
| **ROBERT BROGDEN'S OLATHE** | ) | |
| **BUICK GMC, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on defendants' motion to quash and objections to the service of subpoenas to third party financial institutions (Doc. 28).[1]  As explained in greater detail below the motion is GRANTED.

### Background[2]

Robert Brogden's Olathe Buick GMC, Inc. ("Brogden's") is an automobile dealership which sells new and used vehicles under the ownership of Robert Brogden and general management of David Yoakum.  Plaintiffs were employed by Brogden's in various sales positions during the two years beginning in April 2011 through April 2013. William Dimitras was employed as a "General Sales Manager," Michael Brown worked as a "Used Car Sales Manager," and Cameron Halstead began employment as a

---

[1] Although characterized as a motion to quash, the subpoenas have not been formally served. Defendants' motion is more in the nature of a request for a protective order.

[2] The facts in this section are taken from the parties' pleadings and briefs and should not be construed as judicial findings or factual determinations.

"Salesman" and later became the "Internet Sales Manager." Throughout their employment, each plaintiff was paid pursuant to a written compensation plan which outlined the payment of commissions based upon specific percentages of Brogden's gross sales. Plaintiffs allege that, although defendants paid them some of the promised amounts, defendants refused to pay them the full commissions to which they were entitled. Plaintiffs accuse defendants of deliberately engaging in questionable accounting practices to manipulate the gross sales and therefore lower the amount of commissions due to plaintiffs. Prior to each plaintiff's termination, plaintiffs complained to Brogden's about its illegal practices and now insist that they were fired in retaliation for their whistle-blowing activities.

Plaintiffs assert claims against the *dealership* for breach of contract, violations of the Kansas Wage Payment Act ("KWPA"),[3] wrongful termination, fraud, and negligent misrepresentation. Plaintiffs bring suit against the *individual defendants* for violation of the KWPA and fraud. Defendants deny all allegations and contend, among other defenses, that any acts or omissions concerning plaintiffs' compensation were made in good faith, that plaintiffs were at-will employees, and that the statutory remedy for any KWPA violations precludes the application of a public policy exception to the rule of at-will employment.

---

[3] K.S.A. § 44-313, *et seq*.

**Defendants' Motion to Quash Subpoenas (Doc. 28)**

Consistent with Fed. R. Civ. P. 45(a)(4), plaintiffs served defendants with notices of their intent to serve records subpoenas.  The proposed subpoenas are directed to eight nonparty financial institutions with which defendant Brogden's conducts its banking business, including:  Ally Financial (Doc. 19), Americredit (Doc. 20), Capital One Auto Finance (Doc. 21), Chase Custom (Doc. 22), Fifth Third Bank (Doc. 23), Harris Bank (Doc. 24), Santander Consumer U.S.A. (Doc. 25), and Wells Fargo Finance (Doc. 26). Each subpoena contains an identical list of 11 separate requests for various types of financial records as well as information regarding employee and customer complaints against Brogden's.  Defendants object and move to quash the subpoenas.  Specifically, defendants argue that the information requested contains confidential customer information and proprietary reports, that the requests are overly broad and unduly burdensome, that the information sought is irrelevant, and that the subpoenas improperly seek information from nonparties located more than 100 miles from the place of compliance.  Defendants ask the court to quash the subpoenas, or in the alternative, to stay issuance of the subpoenas until such time as plaintiffs have demonstrated relevance, and to enjoin plaintiffs from contacting defendants' customers.

Plaintiffs contend that defendants failed to properly confer under D. Kan. Rule 37.2 and that they lack standing to quash the subpoenas and to assert the objections of overbreadth and undue burden.  Plaintiffs maintain that the financial records requested will provide necessary information about defendants' sales transactions and profits.  The parties' arguments are discussed in greater detail below.

3

## Compliance with D. Kan. Rule 37.2

Plaintiffs assert that defendants failed to notify plaintiffs of their objections to the proposed subpoenas, much less confer regarding the dispute as required by D. Kan. Rule 37.2. Plaintiffs seek the denial of defendants' motion on that basis. However, the court finds this argument disingenuous. As early as June 2014, counsel for both parties contacted the court for guidance on a number of discovery issues including some presented in this motion. Given the parties' ongoing discussions, the court finds that they have meaningfully conferred and will address the merits of defendants' motion.

## Confidentiality

Defendants claim that the records sought by plaintiffs will include confidential information about Brogden's customers, including their private financial, commercial, and contact information. Defendants' primary concern appears to be that the plaintiffs might use this information to contact the customers, thereby harming defendants' business and reputation. However, on September 30, 2014, at the parties' request, the court conducted a telephone conference to discuss ongoing discovery issues. Following that conference, the court entered an order (Doc. 45) which prohibits plaintiffs from contacting any current or former customers of defendants. In addition, any customer information or proprietary data is specifically protected from disclosure by the Protective Order (Doc. 12). This objection is therefore rejected as moot.

4

**Standing**

Plaintiffs argue that defendants lack standing to quash the nonparty subpoenas. While it is generally true that only the party "to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena," an exception to this rule exists when "the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested."[4]  Because the information requested from the nonparties includes defendants' own financial reports and confidential customer information, the court finds that defendants have a personal right with respect to the records requested from the subpoenaed banks.  This right gives them standing to object to the issuance of the subpoenas.[5]

**Undue Burden**

Defendants assert the conclusory objection that the subpoenas impose an undue burden on the nonparties.  Defendants claim that they will be producing the same information and therefore the requests are duplicative.  However, duplicity in this case does not equate to burden, particularly in light of plaintiffs' allegations that defendants deliberately misstated their accounting records and therefore require information from third parties for comparison.  Defendants present no evidence concerning the "burden" placed on the producing parties.  Likewise, they provide no authority to support their objection and failed to respond to plaintiffs' argument that, because defendants are not the producing party, they have no standing to maintain an undue burden objection.

---

[4] *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003).
[5] *Id.*

Defendants have failed to carry their burden to support their objection; thus, this objection is rejected.

## Relevance

Although Fed. R. Civ. P. 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, "this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[6] Relevancy is broadly construed during discovery but, when relevance is not apparent on the face of the request, the party seeking discovery bears the burden to demonstrate relevance.[7]

Plaintiffs' arguments regarding relevance focus solely on those documents containing *sales-related information* that is relevant to the determination of gross profits. However, the requests contained in the subpoenas appear to extend well beyond sales information. For example, Request No. 1 includes "factory service history reports" and "all information related to the previous history" of all new vehicles sold by defendants, while Request No. 9 seeks "aftermarket and insurance items" used by defendants.[8] Plaintiffs fail to demonstrate how a vehicle's service history or defendants' insurance usage is relevant to the calculation of plaintiffs' commissions on gross sales. Similarly, Request No. 10 seeks copies of complaints made to the nonparties by defendants' employees and customers. While customer or employee complaints may be relevant to

---

[6] *Martinelli v. Petland, Inc.,* No. 10-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010)(internal citations omitted).
[7] *Transcor, Inc.,* 212 F.R.D. at 591 (citing *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 442, 445 (D.Kan.2000)).
[8] Ex. A to Docs. 19-26

plaintiffs' whistle-blowing claims, they completely fail to address this topic in their response.  Because a number of the requests appear overbroad on their face and plaintiffs fail to address the relevance of the individual requests contained within the multiple subpoenas, they have not met their burden to demonstrate relevance.

### Geographic concerns

Defendants argue that all eight subpoenas are outside the territorial reach permitted by federal rule.  All nonparties are located well outside the geographical limitation[9] found in Fed. R. Civ. P. 45(c)(2)(A), which provides that a "subpoena may command production of documents, electronically stored information, or tangible things *at a place within 100 miles* of where the person resides, is employed, or regularly transacts business."  Plaintiffs contend that the personal appearance by representatives of the nonparties is not required.  Even though plaintiffs suggest this fact circumvents the requirement of Rule 45(c)(2)(A), they provide no further argument or authority for their position.[10]  Although the geographic concerns are problematic, the motion need not be decided on this issue because plaintiffs' failure to demonstrate relevance is dispositive of defendants' motion as noted above.

---

[9] *See* Reply, Doc. 35, at 8 n.1, for defendants' explanation of the locations of each nonparty.

[10] Furthermore, if the nonparties would choose not to comply with the subpoenas, plaintiffs' legal recourse to compel compliance would necessarily occur in the "place of compliance" as required throughout Fed. R. Civ. P. 45.  The location of compliance provided on the proposed subpoenas is Kansas City, Missouri; therefore, the "court for the district where compliance is required" would be the Western District of Missouri.

## Conclusion

Given the court's recent conference with the parties regarding discovery disputes and the defendants' upcoming deadline of October 10 to produce sales information,[11] defendants' motion to quash is GRANTED to the extent that plaintiffs are ordered to refrain from issuing the subpoenas at this time and in their current format.  After plaintiffs' counsel has had the opportunity to review defendants' production, if they still wish to obtain documents from the nonparty financial institutions, they may do so by properly limiting the scope of their requests.

**IT IS THEREFORE ORDERED** that defendants' motion to quash and objections to the service of subpoenas (**Doc. 28**) is **GRANTED**, consistent with the ruling herein.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 7th day of October 2014.

_s/ Karen M. Humphreys_____
KAREN M. HUMPHREYS
United States Magistrate Judge

---

[11] *See* discussion *supra* p. 4, reviewing the status conference held on Sept. 30, 2014 and the resulting Order, Doc. 45.